IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

NANCY E. NIPPER-PHELPS,        )
                               )
            Plaintiff,         )
                               )
v.                             )      Case No. CIV-21-28-JFH-SPS
                               )
KILOLO KIJAKAZI,[1]            )
Acting Commissioner of the Social )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

The claimant Nancy E. Nipper-Phelps requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-four years old at the time of the administrative hearing (Tr. 42).  Her education includes completion of a degree in pharmacology, and she has previously worked as a pharmacist who performed job duties of a store manager and a pharmacy service director (Tr. 21, 214).  The claimant alleges inability to work since July 1, 2017, due to rheumatoid arthritis, connective tissue disease, fibromyalgia, and lupus (Tr. 213).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on June 18, 2018.  Her application was denied.  ALJ Edward M. Starr conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 30, 2020 (Tr. 10-23).  The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found at step four that the claimant could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except she could only occasionally climb, balance, crawl, kneel, stoop,

and crouch, and she could only frequently handle and finger bilaterally.  Additionally, he limited her to simple, routine, and repetitive tasks with only occasional interaction with supervisors and co-workers and no interaction with the public, and indicated that she could respond to supervision that was simple, direct, and concrete (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, tube clerk, addressing clerk, and document preparer (Tr. 22-23).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate the evidence at step four, which led to improperly identifying appropriate jobs in significant numbers at step five, and (ii) failing to properly assess the consistency of her statements with the evidence in the record.  The undersigned Magistrate Judge agrees that the ALJ erred in evaluating the evidence at step four, particularly the claimant's subjective statements, and therefore recommends that the case be remanded.

The ALJ found the claimant had the severe impairments of major depressive disorder, general anxiety disorder, lupus, fibromyalgia, attention deficit hyperactivity disorder (ADHD), rheumatoid arthritis, and migraines (Tr. 13). The medical evidence relevant to the reasons for reversal reveals treatment notes reflecting that her general appearance was "chronically ill" (Tr. 310), and she was tender to palpation in the lower neck and back, with 18/18 trigger points, but that she had normal range of motion and normal gait (Tr. 310).  In July 2017, she presented to the emergency room with complaints of major swelling, pain, and fatigue (Tr. 362).  A November 2017 x-ray of the lumbar spine

revealed slight levoscoliosis and rotary scoliosis (Tr. 333). Her diagnoses included ADHD, anxiety, lupus, migraine, rheumatoid arthritis, and scoliosis (Tr. 386). A December 2017 treatment note as to her migraines shows that she reported having them about once per week, but that they were not as debilitating as they used to be (Tr. 392). She was referred to physical therapy for her low back pain, and demonstrated improved flexibility, endurance, and strength, but also reported she might not have energy for physical therapy twice a week once she started infusion treatments for her lupus/RA (Tr. 455). The claimant received treatment at the Oklahoma Arthritis Center, and treatment notes indicate she reported pain even after medication on a scale ranging from 5/10 to 8/10 (Tr. 479, 667, 673, 683). In the fall of 2018, she began infusion treatment for her rheumatoid arthritis (Tr. 499-510).

On September 11, 2018, Dr. Theresa Horton conducted a mental status examination of the claimant. She noted that the claimant appeared capable of understanding all simple and complex ideas, but that she appeared to have increasing problems with managing tasks specific to this information, and that she did not appear to adjust well in areas that are fast paced and/or densely populated (Tr. 465-468).

On September 18, 2010, Dr. Wojciech Dulowski conducted a physical examination of the claimant, during which he assessed her with, *inter alia*, rheumatoid arthritis (noting she was on steroids and immunosuppressive therapy), history of major depression, anemia, and migraine (Tr. 470-475). He noted that she walked normally and could grip and manipulate objects, but that she was very tender of cervical and lumbar spine and that all

passive movement in the upper and lower extremities was normal but painful on extreme (Tr. 475).

Treatment notes reflect that the claimant continued to be positive for, *inter alia*, joint pain, joint swelling, muscle pain, headache, anxiety, and fatigue (Tr. 544). In February 2019, the claimant reported she could have two to three headaches a week, and was taking a number of medications between over-the-counter, preventive, and as-needed meds (Tr. 612). Her doctor referred her for Botox injections at a headache clinic (Tr. 613). The claimant also began mental health treatment in 2019, at which time she was diagnosed with PTSD (Tr. 771).

On May 28, 2020, Dr. John Anigbogu completed a Medical Source Statement ("MSS") as to the claimant's physical impairments (Tr. 819-827). He indicated that the claimant could frequently lift/carry up to ten pounds, sit for six hours in an eight-hour workday, stand/walk one hour each in an eight-hour workday, use her hands continuously, and use the right foot frequently for foot controls and the left foot continuously (Tr. 819-821). He indicated she could never climb ladders/scaffolds, but that she could frequently perform other postural activities (Tr. 822). In support, Dr. Anigbogu cited the claimant's diagnoses including rheumatoid arthritis, connective tissue disease, scoliosis, lupus, chronic neck/low back pain, chronic pain syndrome, and migraine headaches (Tr. 825).

State agency physicians determined initially that the claimant could perform light work, but that she could only occasionally climb and stoop (Tr. 74-76). On reconsideration, the state physician again found she could perform light work, but that she could frequently climb, and only occasionally stoop (Tr. 89-92). As to her mental

impairments, state reviewing physicians found initially and upon reconsideration that she could perform simple and some complex tasks, relate to supervisors and peers on a superficial work basis and adapt to a work situation, but that she could not relate to the general public (Tr. 78, 94).

 At the administrative hearing, the claimant testified that she used to run her own pharmacy but began having symptoms and ended up in the hospital, then had to move in with her parents permanently due to her lupus, rheumatoid arthritis, and fibromyalgia (Tr. 46). She testified that the arthritis affected all of her joints, as well as her primary muscles, but the degree often varied and could be subject to the weather (Tr. 47). Additionally, she testified that the lupus caused more fatigue, and she believed her lupus made her migraines more severe, as well as causing sun sensitivity (Tr. 47). As to her migraines, she estimated that they occurred about fifteen days per month, some worse than others, although they had improved since she started the infusion treatment for her lupus and arthritis (Tr. 48). She testified that even after the infusions, however, about half of her migraines were still so intense she had to take to bed and that the fatigue from her migraines and medication was worse than just with the lupus (Tr. 48-49). In response to questioning, she testified that she does not process information like she used to be able to, providing an example that she has trouble processing statements from other people when she is in conversation (Tr. 51-52). Additionally, she stated she is easily distracted, and now struggles with organization and memory as well as managing her finances and paying bills (Tr. 53-55). She testified she could lift up to ten pounds once, use her hands for ten minutes for writing before her hand cramps, stand no longer than fifteen minutes due to back pain, walk about the same

amount of time, and sit about thirty minutes at a time after which she would need to lie down for an hour (Tr. 56-58).

In his written opinion at step four, the ALJ summarized the claimant's testimony, as well as most of the medical evidence in the record. He made no mention, however, of the claimant's migraines other than when he summarized her hearing testimony (Tr. 16-21). Additionally, after finding her fibromyalgia to be a severe impairment at step two, at step four he discussed it and merely concluded that it was an established impairment without discussing its effects on her RFC (Tr. 18). In discussing the claimant's subjective symptoms, the ALJ found that the claimant's description of symptoms and limitations was inconsistent with the record as a whole and was not substantiated by objective findings (Tr. 20). Specifically, the ALJ recited the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 17).

Although largely focused on the jobs identified at step five, the claimant contends as part of her first argument on appeal that the ALJ failed at step four in properly assessing her RFC to account for all of her impairments (both mental and physical), which directly affected his finding as to the jobs she could perform. At step four, "[t]he RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because [s]he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). Here, the ALJ's written opinion has connected no evidence in the record to instruct the Court how the stated RFC accounts for *all* of her impairments, because he failed to mention, much less discuss, her severe impairment of migraines at step four. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). This was significant here because severe migraines can have limitations that directly impact the claimant's ability to perform work, including environmental limitations. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects.") (*citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984)). The ALJ should have explained why the claimant's severe

physical impairments, supported by repeated treating physician opinion findings, did not call for corresponding limitations in the RFC. His failure to do so here was error.

The above error is further compounded because the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (*quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) (*quoting* 20 C.F.R. § 404.1523). In addition to his error regarding the claimant's severe impairment of migraines, the ALJ here also erred in failing to discuss the combined effect of the claimant's other severe physical impairments as to her pain and fatigue. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

Furthermore, the Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3]  Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[4]  As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8.  An ALJ's symptom evaluation is entitled to deference unless the

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

The claimant contends, *inter alia*, that the ALJ failed to consider the factors set forth above when evaluating her subjective statements, and the undersigned Magistrate Judge agrees. Here, the ALJ cited to SSR 16-3p and 20 C.F.R. §§ 404.1529(c)(3) at the beginning of step four without then *applying* those factors to the evidence. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but even simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10. And the reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence are not entirely supported by the record. For example, the ALJ noted that the claimant's physical therapy treatment was complicated by fatigue, but discredited her fatigue based on normal range of motion results from physical therapy and objective testing results – factors unrelated to questions of fatigue (Tr. 17). He likewise noted her pain with palpation on physical exam but appeared to discount it because she had a normal gait and largely normal range of motion (Tr. 17-18). Furthermore, the ALJ specifically found that the claimant had signs and symptoms of fibromyalgia including fatigue or tiredness, muscle weakness, headache, depression, tenderness, nausea, and heartburn, but failed to connect these signs and symptoms to her assigned RFC (Tr. 18). Indeed, the ALJ acknowledged the claimant's lupus, fibromyalgia, and rheumatoid arthritis as physical impairments, but

wholly failed to account for these (and other) pain-producing impairments when taking into account her testimony as to very limited daily activities. *See, e. g., Bradley v. Berryhill*, 2018 WL 6168066, at *11 (D. Colo. Nov. 26, 2018) ("[T]he ALJ failed to adequately articulate how Plaintiff's daily activities and the medical evidence contradicted Plaintiff's description of her symptoms, particularly considering the sporadic nature of fibromyalgia symptoms. For example, the ALJ noted that Plaintiff drives infrequently, does not use stairs on bad days, goes to the grocery store but needs a wheelchair or cane to do so, and prepares frozen meals on a weekly basis. The ALJ failed to explain how such sporadic and limited activity cast doubt on Plaintiff's description of her symptoms and limitations. . . . Moreover, between September and December 2016, Plaintiff repeatedly rated her pain as six or seven out of ten [], which is entirely consistent with Plaintiff's testimony. Yet, the ALJ did not even address those records in his opinion.").

The ALJ's failure to properly assess the consistency of the claimant's statements regarding her subjective symptoms again highlights that the ALJ has failed to explain how *all* of her impairments are accounted for in the RFC as required by SSR 96-8p. "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski*, 2013 WL 4849101, at *5. The Court must be able to follow the logic, and here it cannot. *See id.*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot

adequately assess whether relevant evidence supports the ALJ's RFC determination.") (*citing Brown*, 245 F. Supp. 2d at 1187).

Because the ALJ failed to properly assess the claimant's RFC, including her subjective statements of pain and other symptoms, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this __1st__ day of August, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**